HUMPHRIES *v.* GOSS.

1. GUARDIANSHIP FUNDS—ADMINISTRATOR—ACCOUNTING.—Where the sureties of a guardian borrowed from him money of the ward, who was also his daughter, and after the death of the guardian repaid it to his administrator, a Court of Equity will not consider the liability of these sureties for the money so paid, until, by proper accounting by this administrator, it is ascertained how much, if anything, is due on the guardianship account by the estate of the guardian.

Before IZLAR, J., Union, October, 1892.

Action by Beulah E. Humphries against H. L. Goss, John T. Hill, M. W. Culp, as administrator of B. D. Culp, deceased, and I. K. Paulk, as administrator of Uriah Paulk, deceased.

*Mr. William Munro*, for appellant.

*Mr. Thos. S. Moorman*, contra.

July 26, 1894. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. The facts of this case are substantially as follows: On January 9, 1867, Uriah Paulk was appointed the guardian of his six children, of whom plaintiff was the youngest, and on the same day executed to the commissioner in equity his several bonds, each in the penal sum of $600, with J. T. Hill, B. D. Culp, and H. L. Goss, who were

*i*

partners in trade under the firm name of J. T. Hill & Co., as his sureties. On the same day the guardian loaned to his said sureties $986, guardianship funds, taking their joint and several sealed note for the same, payable to himself as guardian, with interest from date payable annually. One-sixth part of this note, to wit: $175.83, belonged to the plaintiff's estate. Uriah Paulk, the guardian, settled with three of his wards in his lifetime, using his own funds; and upon his death, November 6, 1877, intestate, the note of $986 (nothing having been paid on it), together with his other personal property, came into the hands of his administrator, Isaac K. Paulk, a son. The administrator collected in the note before this action was brought, mixing it with the other funds of the estate, including it in his returns, and paying it out to debts, including debts to wards, and to distributees, the plaintiff being *ward, creditor,* and *distributee.* The distributees were the said six children living at the time of the death of Uriah Paulk. At that time three of his wards remained to be settled with, having received nothing in the lifetime of their father, and the administrator paid two of them in full, and also in full of their distributive shares of the estate. He paid to the plaintiff $1,036, on account of her guardianship funds and distributive share. The receipts profess to be on account of distributive shares, but they were all written by her husband and nearly all on the same day, and in the aggregage greatly exceed her share of the personal estate.

All of the defendants answered, and the court (July Term, 1887,) ordered all the issues of the action referred to the master, with directions to report his conclusions, "together with a statement of the accounts of the guardian and of his administrator." From some accident, as we suppose, the master did not, as directed, state the account of the guardian and administrator with the plaintiff as ward; but substantially held that she was entitled to her share of the fund claimed to have been "traced to the sureties," without any reference whatever to the actual state of the guardianship account. Exceptions were filed, and the cause coming on to be heard by Judge Izlar, he concurred generally with the master, and decreed that the

plaintiff should recover of the defendants the sum of $517.09, the *pro rata* share of plaintiff (after crediting $200) in the fund assumed to have been "traced" as a part of the trust estate, and still due as such. Before the hearing of the cause, a motion was made to recommit the report, for the purpose of having the account of the guardian taken, as previously "directed;" and also for a new trial on after-discovered evidence, as shown by the affidavits of H. L. Goss, I. K. Paulk, and others. His honor reserved his opinion, stating "that the whole matter would be heard together, and decision rendered both upon the motion and the cause." But no reference was made to the subject in the decree, which (although "a very material portion of the testimony was missing") concurred generally with the master.

The appeal comes to this court, upon the following exceptions alleging error: I. In not sustaining the exception numbered (5) of the defendant, Goss, to the master's report, that the master erred in failing to take an account of the personal estate of Uriah Paulk and reporting same, and in overruling said exception. II. In not sustaining the exception numbered (6) of the defendant, H. L. Goss, to the master's report, that the master erred in failing to report a statement of the accounts of the guardian and of his administrator. III. In sustaining the finding of the master, that there was due to the plaintiff by defendants $517.09, and in giving judgment therefor. IV. In not finding that the $986 note became a part of the estate of Uriah Paulk, and that his administrator was authorized to receive same. V. In not recommitting the report of the master, and directing a statement of the accounts of the guardian and of his administrator. VI. In not granting defendants' motion to recommit, and for a new trial, upon the affidavits submitted. VII. In failing to pass upon the motion for a new trial and to recommit. VIII. In entering up judgment as of a time and date subsequent to the death of the defendant, H. L. Goss. IX. And also because the plaintiff, by reason of her laches in pursuing the estate of the guardian, is estopped from demanding anything of his sureties.

From the view which the court takes of this case, it will not

be necessary or proper to consider any of the grounds of appeal, except those which relate to the refusal of the judge to require the master, as previously directed, to state and report the guardianship account, and refusing to grant a new trial upon the ground of subsequently discovered evidence, so that certain receipts discovered could be proved against the plaintiff. As we understand it, the action is equitable in character by a ward, to trace a trust fund against the sureties of the trustee (guardian), under the following circumstances: The sureties borrowed certain money from the guardian in his lifetime, but after his death paid the same to his administrator, as assets of his intestate's estate. In this state of facts, it is very manifest that the first thing to do was to have the account of the guardian and of his administrator taken, in order to ascertain how much the estate was, and how much was still due to the ward, if any, after allowing all proper payments and expenditures. In the first reference in the case (at July Term, 1887,) the court ordered all the issues of the action referred to the master, with directions to report his conclusions, "together with a statement of the account of the guardian, and of his administrator." For some reason or other, this was not done, and it is impossible to decide the matter intelligently without knowing how much the guardian owed his ward at the time of his death, how much his administrator has paid the ward, and how much, if any, is still due to her. This must be done against the estate of the guardian, before any question as to the liability of the sureties for money which they have paid *can be considered.*

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the record be remanded to the Circuit Court for *a new trial*, in order that the court may require the master to state the guardianship account of Uriah Paulk, deceased, and report the same to the court.